IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| HAKEEN MAKIN, | ) | CASE NO. 1:19-cv-01211 |
| | ) | |
| Petitioner, | ) | JUDGE SARA LIOI |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| WARDEN LYNEAL WAINWRIGHT, | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Respondent. | ) | |

Petitioner Hakeen Makin ("Makin" or "Petitioner") brings this habeas corpus action pursuant to 28 U.S.C. § 2254. Doc. 1. His federal habeas petition is deemed filed on May 20, 2019, the date he placed it in the prison mailing system.[1] Doc. 1, p. 15 (hereinafter referred to as "Petition"). Makin's habeas petition relates to his conviction and sentence rendered in Cuyahoga County Common Pleas Court Case No. 600229-15-CR, *State of Ohio v. Hakeen Makin*. Doc. 1, Doc. 10-1. Following a jury trial, Makin was found guilty of one count of failure to comply with order, signal of a police officer and three counts of felonious assault.[2] Doc. 10-1, p. 24. The trial court sentenced Makin to a total of 8 years in prison. Doc. 10-1, p. 26.

This matter has been referred to the undersigned Magistrate Judge for a Report Recommendation pursuant to Local Rule 72.2. Respondent has filed an Answer/Return of Writ (Doc. 10) and Makin has filed a Traverse (Doc. 12). For the reasons explained herein, the undersigned recommends that the Court **DENY** Makin's Petition (Doc. 1).

---

[1] "Under the mailbox rule, a habeas petition is deemed filed when the prisoner gives the petition to prison officials for filing in the federal courts." *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002) (citing *Houston v. Lack*, 487 U.S. 266, 273 (1988)). Makin's Petition was docketed in this Court on May 28, 2019. Doc. 1.

[2] Makin was found not guilty of four counts of felonious assault. Doc. 10-1, p. 24.

## I. Factual Background

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, the state court's factual findings are presumed correct.  28 U.S.C. § 2254(e)(1). The petitioner has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Railey v. Webb*, 540 F. 3d 393, 397 (6th Cir. 2008).

The Eighth District Ohio Court of Appeals summarized the facts underlying Makin's conviction and sentence as follows:

[*P3]  Prior to trial, Makin requested that his appointed counsel be removed. In February 2016, the trial court conducted a hearing on Makin's request. The court acknowledged Makin's complaints and, at the conclusion of the hearing, denied Makin's motion for new counsel. The court struck Makin's motion to disqualify counsel and did not permit hybrid representation. The court also set a hearing date for February 16, 2016, if Makin wished to request pro se representation. The record reveals that no hearing was ever held.

[*P4]  The matter then proceeded to a jury trial, at which the following pertinent evidence was adduced.

[*P5]  In May 2016, the Fugitive Task Force set up surveillance on the 1700 block of Noble Road in East Cleveland in order to execute an arrest warrant for Makin. Lakewood Police Detective Neil Thibodeaux ("Detective Thibodeaux") along with Lakewood Detective Jeffrey Roda and Lakewood K-9 Officer Chris Obrock were waiting for Makin in an unmarked car parked in a driveway of an abandoned home on Noble Road. Detective Thibodeaux testified that they waited for approximately three hours before they observed Makin enter a car parked approximately four houses south of their location.

[*P6]  Once Makin entered his car, other vehicles from the Fugitive Task Force surrounded Makin's car, attempting to block Makin's avenues of escape. Lakewood Detective Patrick Cantlin and Euclid Detective John Braun each used their respective cars to block Makin, with lights and sirens activated. In response to being blocked in by the officers, Makin drove onto the tree lawn. Detective Thibodeaux attempted to block Makin from escaping by driving his car onto the tree lawn. But as Detective Thibodeaux approached, Makin accelerated, which caused Makin's car to collide with Detective Thibodeaux's car. This collision caused the two vehicles to spin out of control and for Makin's car to momentarily stall.

[*P7]  While Makin's car was stalled, the Task Force Officers exited their cars to arrest Makin. As they approached Makin, they yelled, "Police. Show me your hands." Makin responded by restarting his car and fleeing from the scene. Makin proceeded northbound on Noble Road, where he hit an unoccupied, parked SUV and a car driven by Deputy U.S. Marshal Christopher Snack ("Deputy U.S. Marshal Snack"), who attempted to block Makin's escape. Makin nearly collided head-on with Deputy U.S. Marshal Snack's car, which also contained two other Deputy U.S. Marshals. Following the collision, Makin drove through two yards and a hedge of bushes before continuing on Noble Road.

[*P8]  Makin was then pursued by multiple vehicles. Cleveland Police Officer Jerrod Durichko ("Officer Durichko") responded to the chase in a marked car with his sirens activated. Makin violated several traffic laws during the pursuit. The car chase ended when Makin's car became stuck on a pile of rocks by Interstate 90. Makin exited his car and began to run on foot onto Interstate 90. Officer Durichko and his partner pursued Makin on foot as he ran across Interstate 90 to the exit ramp on the other side of the freeway and back onto the highway. The officers eventually apprehended Makin near the median of Interstate 90.

*State v. Makin*, 2017-Ohio-7882, 2017 Ohio App. LEXIS 4223, ** 1-4 (Ohio App. Ct. Sept. 28, 2017); Doc. 10-1, pp. 85-87.

## II. Procedural Background

### A.  State court conviction

On October 22, 2015, a Cuyahoga County, Ohio grand jury indicted Makin on seven counts of felonious assault in violation of R.C. § 2903.11(A)(2) (Counts 1, 3-8), with each count indicating the victim was a peace officer; and one count of failure to comply with a police order in violation of R.C. § 2921.331(B) (Count 2) (Case No. 600229).[3]  Doc. 10-1, pp. 4-6.   On October 27, 2015, Makin, represented by assigned counsel Attorney McGraw, pleaded not guilty to the indictment.  Doc. 10-1, p. 7.  A pretrial was set before Judge Burnside on November 3, 2015.  Doc. 10-1, p. 7.

---

[3] Case No. 600229 involved two incidents.  Doc. 10-1, pp. 4-6, Doc. 10-2, pp. 9-10.  The first occurred on or about October 23, 2014, and involved Det. Luke Combs and his attempt to apprehend Makin in Westlake.  Doc. 10-1, p. 4 (Count 1), Doc. 10-2, p. 10.  The second occurred on or about May 11, 2015, and involved the Northern Ohio Fugitive Task Force ("East Cleveland incident").  Doc. 10-1, pp. 5-6, Doc. 10-2, p. 10.

On December 4, 2015, Makin filed a pro se motion to disqualify Attorney McGraw as his counsel.  Doc. 10-1, pp. 8-10.  The caption of the motion listed three case numbers – 594291, 600229, and 594103.[4]  Doc. 10-1, p. 8.  Makin requested that the court appoint another attorney for him because he was dissatisfied with the representation Attorney McGraw provided to him on a prior case (594103).  Doc. 10-1, pp. 8-10.

Makin filed a second pro se motion to disqualify Attorney McGraw on January 25, 2016.  Doc. 10-1, pp. 11-14.  The caption of the second motion to disqualify counsel listed two case numbers (Case Nos. 594291 and 600229).  Doc. 10-1, p. 11.  Makin reiterated his request that a new attorney be appointed for him, stating that Attorney McGraw had a conflict of interest, did not have Makin's best interest in mind, and/or did not put his best foot forward when representing Makin in a prior case (Case No. 594103).  Doc. 10-1, pp. 11-14.  Makin also argued that he had not yet received a full disclosure of the charges being brought against him or full disclosure of the evidence.  Doc. 10-1, p. 13.

Subsequently, on February 4, 2016, Attorney McGraw filed a motion for permission to withdraw as counsel.  Doc. 10-1, p. 5.  Attorney McGraw noted in his motion that one case had since resolved and the three cases listed in the caption of his motion (Case Nos. 600229, 597121, and 594291) remained set for trial.  Doc. 10-1, p. 15.  As grounds for his motion for permission to withdraw, Attorney McGraw stated:

> In recent days, counsel's relationship with the defendant has become strained to the point that counsel now believes that it would in the interest of justice and in the interest of Mr. Makin to appoint him new trial counsel.  Irreconcilable differences have developed, convincing counsel that a change in trial counsel is warranted.

---

[4] The pending habeas proceeding pertains to Case No. 600229.  Doc. 1, p. 1.

4

Doc. 10-1, p. 15.

On February 9, 2016, the trial court held proceedings relative to the pending motions relating to Makin's counsel.[5]  Doc. 10-1, p. 16, Doc. 10-2, pp. 6-33.  The trial court struck Makin's motion to disqualify counsel, noting that hybrid representation is not permitted.  Doc. 10-1, p. 16.  The trial court nevertheless considered Makin's claim that he had not been provided with full discovery.  Doc. 10-2, pp. 11-15.  The trial court reviewed with counsel what discovery, reports, and photographs had been provided and, to the extent not already provided, ordered that the information be provided to Makin.  Doc. 10-2, pp. 11-15.  The trial court also considered Makin's claims that Attorney McGraw did not have his best interests at heart and that he was a pessimist but found that Makin's complaints did not justify removal of Attorney McGraw from the case.  Doc. 10-2, pp. 15-20.

During that exchange, Makin indicated he wanted to fire his attorney and represent himself.  Doc. 10-2, pp. 20-31.  The trial court explained to Makin that if he wanted to represent himself a hearing would be scheduled during which time the court would go through a colloquy with him to determine whether he was knowingly, intelligently, and voluntarily waiving his right to be represented by counsel.  Doc. 10-2, pp. 21-31.  Counsel for Makin requested that before proceeding with such a hearing, he be provided an opportunity to speak with his client.  Doc. 10-2, p. 31.  The trial court had a copy of the colloquy provided to Makin so that he could consider the types of questions that the court would ask him should he wish to pursue a request to represent himself.  Doc. 10-2, p. 31.  The hearing was concluded with an order denying the request for appointment of a new attorney in place of Attorney McGraw.  Doc. 10-1, p. 16, Doc. 10-2, pp. 28-29, 31-33.  As part of its order, the trial court also indicated that, if Defendant

---

[5] The case was called for case nos. 594291 and 600229.  Doc. 10-2, p. 6.

wanted to request to proceed pro se, a hearing would be held on February 16, 2016.  Doc. 10-1, p. 16.

On March 18, 2016, Makin filed an Affidavit for Disqualification of Cuyahoga County Common Pleas Judge Janet R. Burnside (Doc. 10-1, pp. 17-21), arguing that his motion to disqualify Attorney McGraw was "denied due to Judge Burnside being bias and prejudice and lacking discernment[]" (Doc. 10-1, p. 17).

On April 27, 2016, Makin's case (Case No. 600229) was called for jury trial.  Doc. 10-2, p. 34.  Prior to proceeding with jury selection, Attorney McGraw informed the court that his client had informed him the day before that he had filed a request for a writ of mandamus with the Eighth District Court of Appeals seeking to have the trial judge remove him from the case.  Doc. 10-2, pp. 43-44.  Attorney McGraw relayed that it was Makin's position that the trial should not proceed until resolution of the request for a writ of mandamus.  Doc. 10-2, p. 44.  The trial judge noted that she was aware of the filing and it did not preclude the court from proceeding with trial.  Doc. 10-2, pp. 43-44.  The trial then proceeded as scheduled.  Doc. 10-2, p. 44.

During trial, the State of Ohio voluntarily dismissed the peace officer furthermore clauses in Counts 3, 4, and 5.  Doc. 10-1, p. 22.  Also, during trial and prior to presenting the defense's case, Makin's attorney requested a continuance in order to secure the presence of two witnesses, a person that Makin was meeting when he was arrested in May and an auto mechanic who had knowledge of the damage to Makin's vehicle and was referred to as a collision expert.  Doc. 10-4, pp. 56-57.  Makin's counsel explained that he had issued subpoenas the day before but he had not heard from or been able to contact either of the individuals.  Doc. 10-4, p. 57.  The trial court denied the request for continuance, noting that it was not the first time the case had been set for

6

trial, the subpoenas could have been issued earlier, and it was not clear from the description of the evidence that it would be pertinent or relevant.  Doc. 10-4, pp. 58-59.  The trial court also noted that, with respect to the collision expert, the defense had not provided the required expert disclosures required by the criminal rules.  Doc. 10-4, p. 59.

The trial court denied the defense's motions for acquittal made pursuant to Ohio Criminal Rule 29.  Doc. 10-1, p. 22.  With the State's consent, the trial court deleted from Count 1 and Counts 3 through 8, clauses contained in those counts alleging actual causation of physical harm. Doc. 10-1, p. 22.   On May 2, 2016, the jury returned its verdict.  Doc. 10-2, pp. 24-25, Doc. 10-4, p. 202-205.  The jury found Makin not guilty on Count 1 and Counts 6 through 8.  Doc. 10-2, pp. 24-25, Doc. 10-4, pp. 203-205.  The jury found Makin guilty on Count 2 and Counts 3 through 5.  Doc. 10-2, pp. 24-25, Doc. 10-4, pp. 203-205.

On May 10, 2016, the trial court sentenced Makin to an aggregate term of eight years in prison – three years in prison on Count 2 (failure to comply with order, signal of police officer) and five years on Counts 3, 4, and 5 (felonious assaults) to be served concurrent with each other but consecutive to Count 2.[6]  Doc. 10-2, pp. 26-29.

**B.  Direct appeal**

On May 31, 2016, Makin, through assigned appellate counsel, filed a notice of appeal (COA Case No. 16-104545).  Doc. 10-1, pp. 30-39.  On November 11, 2016, Makin, through different appellate counsel, filed his appellate brief, (Doc. 10-1, pp. 40-63), raising the following six assignments of error:

1.    The trial court committed error and denied appellant his rights under the constitutions of the United States and Ohio when it wrongfully denied him his right to self-representation.

---

[6] The three-year sentence imposed on Count 2 was ordered to be served consecutive with Case No. 594103.  Doc. 10-2, p. 26.

2.      The trial court abused its discretion to the prejudice of the appellant when it failed to grant a continuance to secure the appearance of a witness.

3.      The evidence was insufficient to convict the appellant of felonious assault, R.C. 2903.11, and failure to comply with a lawful order/signal of a police officer, R.C. 2921.331.

4.      The appellant's convictions were against the manifest of the weight of the evidence.

5.      The appellant was denied the effective assistance of counsel and was not afforded his constitutional right to counsel pursuant to the Sixth Amendment, due process, and a fair trial pursuant to the Fifth and Fourteenth Amendments of the United States Constitution.[7]

6.      The trial court erred by imposing court costs without complying with R.C. 2947.23(A).

Doc. 10-1, pp. 41-42, 43-44, 47-62.  On January 4, 2017, the State filed its appellate brief (Doc. 10-1, pp. 64-82.  On September 28, 2017, the court of appeals affirmed the trial court's judgment.  Doc. 10-1, pp. 83-100; *Makin*, 2017 Ohio App. LEXIS 4223.

On October 20, 2017, Makin, acting *pro se*, filed a motion for leave to file a motion for reconsideration pursuant to App. R. 26(A).  Doc. 10-1, pp. 101-135.  Makin asserted that he required additional time to prepare and submit a comprehensible 26(A) motion for reconsideration, noting that he had not received the court of appeals' September 28, 2017, opinion until October 4, 2017.  Doc. 10-1, p. 101.  On December 11, 2017, the court of appeals denied Makin's motion for leave to file a motion for reconsideration.  Doc. 10-1, p. 136.

Makin did not file an appeal with the Supreme Court of Ohio regarding the denial of his motion for leave to file a motion for reconsideration or the court of appeals' September 28, 2017, decision affirming his convictions.

---

[7] In his fifth assignment of error, Makin raised the following three alleged instances of ineffective assistance of trial counsel: (A) failure to subpoena witnesses in a timely manner; (B) failure to provide a written report of an expert; and (C) cumulative errors of counsel.  Doc. 10-1, pp. 60-62.

### C.  Application to reopen appeal pursuant to App. R. 26(B)

On December 19, 2017, Makin, acting *pro se*, filed an application for reopening his direct

appeal pursuant to App. R. 26(B).  Doc. 10-1, pp. 137-146.  In his application, Makin argued that

his appellate counsel was ineffective for failing to raise the following assignments of error:

1.  The trial court committed error and denied appellant his rights under the constitutions of the United States and Ohio when it "abused its discretion," and wrongfully denied appellant his right to disqualify his trial counsel Brian McGraw.

2.  The trial court abused its discretion to the prejudice of the appellant when it failed to grant a continuance to secure the appearance of "expert witness Jeff White."

3.  Ineffective assistance of counsel against appellate counsel for not raising prosecutorial misconduct due to the state losing or destroying and not preserving materially exculpatory evidence and that being the front end of U.S. Marshal Snack's 2008 Dodge Caravan and appellant is also going to combine ineffective assistance of trial counsel for not bringing to the trial court['s] attention that the state lost or destroyed exculpatory evidence and that being the front end of U.S. Marshal Snack['s] 2008 Dodge Caravan.

Doc. 10-1, pp. 139-146.  On December 27, 2017, the State of Ohio filed its response to Makin's

application to reopen his appeal.  Doc. 10-1, pp. 147-155.  On March 28, 2018, the state court of

appeals denied Makin's application to reopen.  Doc. 10-1, pp. 156-165; *see also State v. Makin*,

2018-Ohio-1179, 2018 Ohio App. LEXIS 1395 (Ohio App. Ct. Mar. 28, 2018).

On May 9, 2018, Makin, acting *pro se*, filed a notice of appeal with the Supreme Court of

Ohio from the state court of appeals' March 28, 2018, decision (Doc. 10-1, pp. 166-167) and

memorandum in support of jurisdiction (Doc. 10-1, pp. 168-219).  In his memorandum in

support of jurisdiction, Makin raised the following three propositions of law:

1.  Trial court erred and denied appellant his rights under the constitution when the trial court denied appellant his right to disqualify his defense attorney.

2.      The trial court abused its discretion to the prejudice of appellant when it failed to grant a continuance to secure Jeff White (expert witness).

3.      Ineffective assistance of counsel due to appellate counsel not raising prosecutorial misconduct when the state lost or destroyed and didn't preserve materially exculpatory evidence being Officer Snack[']s front end to the 2008 Dodge Caravan.

Doc. 10-1, p. 169.  On August 1, 2018, the Supreme Court of Ohio declined to accept

jurisdiction of the Makin's appeal.  Doc. 10-1, p. 220.

### D.  Federal habeas corpus petition

Makin raises the following three grounds for relief in his Petition:

> **GROUND ONE**:  Ineffective assistance of appellant counsel for not presenting that: The trial court violated Petitioner's constitutional right and prejudiced him and abused its discretion when it failed to grant Petitioner a continuance to secure the appearance of "expert witness Jeff White."
>
> **Supporting Facts**: Appellate counsel Richard Agopian failed to mention the importance of securing "expert witness" Jeff White but spoke about a possible witness by the name of Melvin Robertson who wouldn't have helped or hurt the defense if he had appeared or not appeared.  The fact is Jeff White assessed Petitioner's damages to his vehicle which was a rental car and would have further explained exactly how the damages occurred and if Petitioner hit something or if another vehicle crashed into Petitioner and also explained or would have explained the fact that Petitioner was stationary or mobile when the collision happened and the fact that Petitioner never collided head on with U.S. Marshal[] Snack[']s vehicle and how Petitioner's damages are inconsistent with the Marshal[]s' testimony.
>
> **GROUND TWO**:  Ineffective assistance of appellant counsel for not presenting that: The trial court committed error and denied Petitioner his rights under the constitution of the United States when it abused its discretion and wrongfully denied Petitioner his right to disqualify trial counsel Brian Mcgraw.
>
> **Supporting Facts**: Petitioner went to trial prior to this case on case number 594103-CR15 with counsel Brian Mcgraw and lost at trial.  On December 4, 2015, 5 months prior to Petitioner's second trial, case # 600229, Petitioner filed a motion to disqualify counsel expressing the reasons why he wanted to disqualify counsel and was denied by the trial

court.  On 1-25-16 Petitioner filed another motion to disqualify counsel and was denied.  On 2-4-16 trial counsel Brian Mcgraw filed a motion to withdraw from being Petitioner['s] attorney which was denied.  Petitioner was forced by the trial court to go to trial with counsel Brian Mcgraw which was clear by both parties that there was "conflict," and time to part ways.  Petitioner's constitutional rights were violated.

**GROUND THREE**: Ineffective assistance of appellant counsel for not presenting that: The trial court violated Petitioner's constitutional rights due to the state losing or destroying and not preserving materially exculpatory evidence and that being the front end of U.S. Marshal[] Snack['s 200 Dodge Caravan.

**Supporting Facts**: On record when picture was shown of Officer[] Snack['s] Dodge Caravan Officer Snack stated that the front grill and bumper are not on the vehicle and the state didn't have any pictures of the front end of the van anywhere.  On the front end of Petitioner's vehicle they're [sic] were mostly scrapes on the front end and with the evidence of the U.S. Marshal[][']s front end it would have been absolutely clear that the Petitioner and the U.S. Marshal[][']s vehicles never collided and no accident ever occurred.

Doc. 1, pp. 5-10.

### III. Law & Analysis

**A.    Standard of review under AEDPA**

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214 ("AEDPA"), apply to petitions filed after the effective date of the AEDPA.  *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007).  In particular, the controlling AEDPA provision states:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in
> the State court proceeding.

28 U.S.C. § 2254(d).  "A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'"  *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)).  "A state court's adjudication only results in an 'unreasonable application' of clearly established federal law when 'the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'"  *Id*. at 599-600 (quoting *Williams*, 529 U.S. at 413).  "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous."  *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003).  "The state court's application of clearly established law must be objectively unreasonable."  *Id.*

"A state court decision involves 'an unreasonable determination of the facts in light of the evidence presented in the State court proceeding' only if it is shown that the state court's presumptively correct factual findings are rebutted by "clear and convincing evidence" and do not have support in the record."  *Matthews v. Ishee*, 486 F.3d 883, 889 (6 th Cir. 2007) (citing 28 U.S.C. § 2254(d) and § 2254(e)(1)).  "The presumption of correctness also applies to factual findings made by a state appellate court based on the trial record."  *Matthews*, 486 F.3d at 889 (citing *Sumner v. Mata,* 449 U.S. 539, 546-47, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981)).

In order to obtain federal habeas corpus relief, a petitioner must establish that the state court's decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Bobby v.*

*Dixon*, 132 S. Ct. 26, 27 (2011) (quoting *Harrington v. Richter*, 131 S. Ct. 770, 786–87 (2011).

This bar is "difficult to meet" because "habeas corpus is a 'guard against extreme malfunctions

in the state criminal justice systems,' not a substitute for ordinary error correction through

appeal." *Richter*, 131 S. Ct. at 786 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979)

(Stevens, J., concurring in judgment)).  In short, "[a] state court's determination that a claim

lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the

correctness of the state court's decision." *Id*. (quoting *Yarborough v. Alvarado*, 541 U.S. 652,

664 (2004)).  The petitioner carries the burden of proof.  *Cullen v. Pinholster*, 131 S.Ct. 1388,

1398 (2011).

### B.      Exhaustion and procedural default

A federal court may not grant a writ of habeas corpus unless the petitioner has exhausted

all available remedies in state court.  28 U.S.C. § 2254(b)(1)(A).  A state defendant with federal

constitutional claims must fairly present those claims to the state courts before raising them in a

federal habeas corpus action.  28 U.S.C. § 2254(b), (c); *Anderson v. Harless*, 459 U.S. 4, 6

(1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971); *see also Fulcher v. Motley*,

444 F.3d 791, 798 (6th Cir. 2006) (quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003))

("[f]ederal courts do not have jurisdiction to consider a claim in a habeas petition that was not

'fairly presented' to the state courts").  In order to satisfy the fair presentation requirement, a

habeas petitioner must present both the factual and legal underpinnings of his claims to the state

courts.[8]  *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  This means that the petitioner

---

[8] In determining whether a petitioner presented his claim in such a way as to alert the state courts to its federal nature, a federal habeas court should consider whether the petitioner: (1) relied on federal cases employing constitutional analysis; (2) relied on state cases employing constitutional analysis; (3) phrased the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleged facts well within the mainstream of constitutional law.  *McMeans*, 228 F.3d at 681.

must present his claims to the state courts as federal constitutional issues and not merely as issues arising under state law. *See, e.g.*, *Franklin v. Rose*, 811 F.2d 322, 324-325 (6th Cir. 1987); *Prather v. Rees*, 822 F.2d 1418, 1421 (6th Cir. 1987). Further, a constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845-48 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990).

Additionally, a petitioner must meet certain procedural requirements in order to have his claims reviewed in federal court. *Smith v. Ohio Dep't of Rehab. & Corr.,* 463 F.3d 426, 430 (6th Cir. 2006). "Procedural barriers, such as . . . rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." *Daniels v. United States*, 532 U.S. 374, 381 (2001). Although procedural default is sometimes confused with exhaustion, exhaustion and procedural default are distinct concepts. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). Failure to exhaust applies where state remedies are "still available at the time of the federal petition." *Id.* at 806 (quoting *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982)). In contrast, where state court remedies are no longer available, procedural default rather than exhaustion applies. *Williams*, 460 F.3d at 806.

Procedural default may occur in two ways. *Williams*, 460 F.3d at 806. First, a petitioner procedurally defaults a claim if he fails "to comply with state procedural rules in presenting his claim to the appropriate state court."[9] *Id.* Second, "a petitioner may procedurally default a claim

---

[9] In *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986), the Sixth Circuit provided four prongs of analysis to be used when determining whether a claim is barred on habeas corpus review due to a petitioner's failure to comply with a state procedural rule: (1) whether there is a state procedural rule applicable to petitioner's claim and whether petitioner failed to comply with that rule; (2) whether the state court enforced the procedural rule; (3) whether the state procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim and (4) whether the petitioner can demonstrate cause for his failure to follow the rule and that he was actually prejudiced by the alleged constitutional error. *See also Williams*, 460 F.3d at 806 ("If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue,

14

by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures.'" *Williams*, 460 F.3d at 806 (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999)); *see also  Baston v. Bagley*, 282 F.Supp.2d 655, 661 (N.D.Ohio 2003) ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition."); *see also State v. Moreland*, 50 Ohio St.3d 58, 62 (1990)(failure to present a claim to a state court of appeals constituted a waiver).   "If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Williams*, 460 F.3d at 806.  While the exhaustion requirement is technically satisfied because there are no longer any state remedies available to the petitioner, see *Coleman v. Thompson,* 501 U.S. 722, 732 (1991), the petitioner's failure to have the federal claims considered in the state courts constitutes a procedural default of those claims that bars federal court review.  *Williams,* 460 F.3d at 806.

To overcome a procedural bar, a petitioner must show cause for the default and actual prejudice that resulted from the alleged violation of federal law or that there will be a fundamental miscarriage of justice if the claims are not considered.  *Coleman*, 501 U.S. at 750. "'[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot be fairly attributed to him." *Id.* at 753.  "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Id.*   "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'" *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

---

and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.") (citing *Maupin*, 785 F.2d at 138).

### C.      Underlying unexhausted claims

As explained by the Sixth Circuit, "bringing an ineffective assistance claim in state court based on counsel's failure to raise an underlying claim does not preserve the underlying claim for federal habeas review because 'the two claims are analytically distinct.'"  *Davie v. Mitchell*, 547 F.3d 297, 312 (6th Cir. 2008) (citing *White v. Mitchell,* 431 F.3d 517, 526 (6th Cir. 2005)). "Thus, a Rule 26(B) application 'based on ineffective assistance cannot function to preserve' the underlying substantive claim." *Id.*

In his Petition, Makin asserts grounds for relief premised on ineffective assistance of appellate counsel premised on alleged errors occurring in his trial, i.e., that the trial court abused its discretion in denying his request to continue his trial to secure the appearance of "expert witness" Jeff White; that the trial court abused its discretion and wrongfully denied his request to disqualify trial counsel; and/or that the prosecutor improperly withheld, destroyed or lost evidence.  However, as explained above, those underlying claims were not preserved through the filing of an App. R. 26(B) application to reopen.  Furthermore, even if Makin had raised the underlying claims as independent grounds for relief in his federal habeas petition, he did not fairly present those underlying claims to the state courts.  For example, Makin did not present a claim of prosecutorial misconduct as part of his direct appeal.  Moreover, Makin did not file an appeal to the Supreme Court of Ohio from the decision rendered by the state court of appeals in his direct appeal.

For the reasons set forth above, the unexhausted underlying claims are not properly before this federal habeas court.  Thus, to the extent that Makin seeks federal habeas relief on those unexhausted claims, the undersigned recommends that the Court DENY Makin's Petition.

#### D.  Analysis of Makin's three grounds for relief

The three grounds for relief alleging ineffective assistance of appellate counsel (Doc. 1, pp. 5-10), were presented in Makin's application to reopen his direct appeal pursuant to App. R. 26(B) (Doc. 10-1, pp. 138-146).  Subsequently, Makin filed a notice of appeal from the state court of appeals' March 28, 2018, denial of his application to reopen (Doc. 10-1, pp. 166-219), which the Supreme Court of Ohio declined to accept jurisdiction of (Doc. 10-1, p. 220).  The memorandum in support of jurisdiction did not clearly raise ineffective assistance of appellate counsel regarding Makin's request to disqualify counsel and/or regarding his request for a continuance to secure the attendance of an "expert witness."  Doc. 10-1, p. 169.  Instead, Makin framed the issues as trial court error.  Doc. 10-1, p. 169.  Assuming arguendo that all three claims of ineffective assistance of appellate counsel were fairly presented to the Supreme Court of Ohio and/or are not procedurally defaulted, for the reasons explained herein, the undersigned recommends that the Court deny Makin's grounds for relief on the merits.[10]

#### 1.  Ineffective assistance of appellate counsel

The Sixth Amendment provides, in pertinent part, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."  U.S. Const. Amend. VI.  In *Strickland v. Washington*, the Supreme Court set forth two requirements that must be shown to establish that an attorney was constitutionally ineffective.  *Strickland v. Washington,* 466 U.S. 668, 687 (1984).

---

[10] Respondent raises various procedural default arguments. Doc. 10, pp. 16-22, 27-30.  However, a federal court need not address a procedural default argument prior to disposing of the matter on the merits.  *See Davis v. Larson,* 769 Fed. Appx. 233, 236 (6th Cir. Apr. 24, 2019) (unpublished) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)).

17

First, a petitioner must demonstrate "that counsel's performance was deficient." *Strickland*, 466 U.S. at 687.  "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id.*  A petitioner must show that counsel's representation fell below an objective standard of reasonableness based on all the circumstances surrounding the case.  *Id.* at 688.  "Judicial scrutiny of counsel's performance must be highly deferential [because] [i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable."  *Id.* 689.  Thus, in order to conduct a fair assessment of counsel's performance, every effort must be made "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  *Id.*  In light of "the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"  *Id.* (internal citation omitted).

Second, a petitioner must demonstrate "that the deficient performance prejudiced the defense."  *Id.* at 687.  "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  *Id.*  "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.* at 694.

The right to effective assistance of counsel extends to the first appeal as of right.  *Evitts v. Lucey*, 469 U.S. 387 (1984).   The *Strickland* standard as outlined above also applies when assessing claims of ineffective assistance of *appellate* counsel.  *Smith v. Robbins*, 528 U.S. 259, 285 (2000) (finding that *Strickland* provided  the proper standard for addressing whether appellate counsel was ineffective for failing to file a merits brief).

Appellate counsel is not obligated to advance every possible argument on appeal.  *Jones v. Barnes*, 463 U.S. 745, 750-754 (1983).   "Effective appellate counsel should not raise every nonfrivolous argument on appeal, but rather only those arguments most likely to succeed."  *Davila v. Davis*, 137 S.Ct. 2058, 2067 (2017) (citing *Smith v. Murray*, 477 U.S. 527, 536 (1986); *Jones*, 463 U.S. at 751-753).  Thus, "[d]eclining to raise a claim on appeal . . . is not deficient performance unless that claim was plainly stronger than those actually presented to the appellate court."  *Id*.  (citing *Smith v. Robbins*, 528 U.S. at 288).  The "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy."  *Smith v. Murray*, 477 U.S. at 536 (quoting *Jones*, 463 U.S. at 751-752)).

Additionally, when a state court of appeals reaches the merits of an ineffective-assistance of counsel claim, federal habeas courts provide AEDPA deference to that adjudication under § 2254(d).  *Perkins v. McKee*, 411 Fed. Appx. 822, 828 (6th Cir. 2011).  There is no de novo review of the evidence.  In *Harrington*, the Supreme Court emphasized the double layer of deference that federal courts must give state courts in reviewing *Strickland* claims under AEDPA:

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded

disagreement. . . . An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. . . . Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Perkins*, 411 Fed. Appx. at 828 (quoting *Harrington,* 131 S.Ct. 770, 786-788).

### 2.  Ground One

In Ground One, Makin argues that his appellate counsel was ineffective for failing to raise in his direct appeal that the trial court abused its discretion and violated his constitutional rights when it failed to grant him a continuance to secure the appearance of "expert witness" Jeff White, who Makin contends would have testified regarding the damage to his car and explained that Makin did not collide head on with the U.S. Marshal's vehicle.  Doc. 1, p. 5.

On appeal, Makin's appellate counsel raised six assignments of error, including, *inter alia*, claims that the trial court erred in denying him a continuance to secure a witness and claims that his trial counsel was constitutionally ineffective for failing to timely subpoena witnesses and failing to provide a written report from an expert prior to trial.  Doc. 10-1, pp. 43-44, 51-53, 59-62.  As noted above, in his App. R. 26(B) application, Makin argued that his appellate counsel was ineffective for failing to argue that he was prejudiced by the trial court failing to grant him a continuance to secure the appearance of his "expert witness" Jeff White.  Doc. 10-1, pp. 140-142.  In its March 20, 2018, journal entry and opinion, the state court of appeals considered Makin's App. R. 26(B) application to reopen on the merits, applying the *Strickland* standard.  Doc. 10-1, pp. 156-165; *Makin*, 2018 Ohio App. LEXIS 1395.

With respect to Makin's claim that his appellate counsel was constitutionally ineffective for failing to raise as an additional assignment of error that the trial court abused its discretion by not granting a continuance to allow Makin to secure the appearance of "expert witness" Jeff White, the state court of appeals found no prejudice.  In reaching its conclusion, the state court of appeals stated:

> [*P8]  Makin's second proposed assignment of error is that:
>
>> The trial court abused its discretion to the prejudice of the appellant when it failed to grant a continuance to secure the appearance of "expert witness Jeff White."
>
> [*P9]  Makin, through his second proposed assignment of error, argues that the trial court erred by failing to grant a continuance in order to obtain the testimony of an expert witness.
>
> [*P10]  The issue of whether the trial court prejudiced Makin by not granting a continuance to secure the appearance of an expert witness was already addressed through the second assignment of error as raised on direct appeal. This court held that:
>
>> In the second assignment of error, Makin argues the trial court abused its discretion when it denied defense counsel's request for a continuance in order to secure the appearance of Melvin Robertson ("Robertson") — a witness for the defense.
>>
>> The decision to grant or deny a motion for continuance is left to the broad and sound discretion of the trial judge, and an appellate court may not disturb the trial court's ruling absent an abuse of discretion. *Cleveland v. Washington*, 8th Dist. Cuyahoga Nos. 97945 and 97946, 2013-Ohio-367, ¶ 11, citing *State v. Unger*, 67 Ohio St.2d 65, 423 N.E.2d 1078 (1981). "The term 'abuse of discretion' * * * implies that the court's attitude is unreasonable, arbitrary or unconscionable." (Citations omitted.) *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 5 Ohio B. 481, 450 N.E.2d 1140 (1983), quoting *State v. Adams*, 62 Ohio St.2d 151, 404 N.E.2d 144 (1980).
>>
>> In the instant case, defense counsel asked for a continuance, after the state rested its case, so two witnesses — Robertson and Jeff White ("White") — could be brought into court to testify for Makin. Defense counsel noted that he had subpoenas issued for both individuals the day before, but his efforts to contact them have been unsuccessful. Robertson was the individual Makin

21

was meeting with on Noble Road. White is an expert on auto mechanics repair and damage. With respect to Robertson, defense counsel stated:

I will say from the nature of the testimony, I don't know that Mr. Robertson being here or not for that purpose caused him any significant damage, because both from the State's side and from my client, there seems to be testimony that my client was meeting with a person in a parking lot.

We recognize "[i]t is incumbent upon a party moving for a continuance to secure the attendance of witnesses to demonstrate that substantial favorable testimony will be forthcoming and that the witnesses are willing and available as well." *In the Matter of: Timothy Reynolds*, 8th Dist. Cuyahoga No. 46585, 1983 Ohio App. LEXIS 12312 (Nov. 3, 1983), citing *U.S. v. Boyd*, 620 F.2d 129 (6th Cir.1980); *U.S. v. Medina-Arellano*, 569 F.2d 349 (5th Cir.1978). Here, defense counsel stated that Robertson's absence did not cause Makin any prejudice because both Makin and the state essentially agreed that Makin was meeting someone in a parking lot. This testimony would have been more cumulative than substantially favorable to Makin. Because Makin has not proffered any favorable testimony of a substantial nature that would have been elicited from Robertson, we cannot say the trial court abused its discretion in denying his motion for a continuance.

*State v. Makin, supra*, at ¶ 18.

[*P11]  Because the general issue of a continuance, based upon the request to secure the appearance of witnesses has already been addressed on appeal, we find that the doctrine of res judicata prevents its further review through this application for reopening. *In addition, we find that Makin has failed to demonstrate that any substantial favorable evidence would have been adduced at trial if Jeff White had appeared at trial and testified as an expert witness with regard to any damages sustained by Makin's motor vehicle or any other motor vehicle. Once again, we find that the trial court did not abuse its discretion in denying Makin's request for a continuance. Makin has failed to demonstrate that he was prejudiced through his second proposed assignment of error.*

*Makin*, 2018 Ohio App. LEXIS 1395, ** 5-7 (emphasis supplied).

The state court's factual findings are presumed correct.  28 U.S.C. § 2254(e)(1).  And, Makin has the burden of rebutting that presumption by clear and convincing evidence.  Petitioner argues that he did present to the court of appeals information explaining that the expert witness would have provided favorable evidence to the defense.  Doc. 12, p. 5.  However, the court of appeals having considered those arguments concluded that Makin failed to demonstrate that "any

substantial favorable evidence would have been adduced at trial if Jeff White had appeared at trial and testified[.]" *Makin*, 2018 Ohio App. LEXIS 1395, ** 7.  Makin has not satisfied the clear and convincing burden necessary to rebut the presumption of correctness afforded the state court's factual findings.  Even assuming that Jeff White would have qualified as an expert, the information before the trial court consisted simply of Makin's counsel's description as to what he understood the expert would testify to.  Doc. 10-4, p. 57 (defense counsel indicating that Jeff White would "testify that the damage to the car is consistent with the damage to a car that is at a standstill[]").  The trial court indicated that it was "not sure from the description of the evidence that it's pertinent stuff, that it's relevant to who was standing still and who was not standing still[.]" Doc. 10-4, p. 57.  Additionally, the trial court observed that there had been a lack of compliance with the expert disclosure requirements (Doc. 10-4, p. 59), i.e., no expert report had been provided prior to trial.  Considering this record, Makin is unable to rebut by clear and convincing evidence the state court of appeals' determination that Makin "failed to demonstrate that any substantial favorable evidence would have been adduced at trial if Jeff White had appeared at trial and testified as an expert witness with regard to any damages sustained by Makin's motor vehicle or any other motor vehicle."[11] *Makin*, 2018 Ohio App. LEXIS 1395, ** 7.

Makin's arguments in his Traverse are primarily premised on the trial court's alleged abuse of discretion in denying the continuance.  He has not shown that counsel's performance

---

[11] Makin attached to his Traverse a copy of an appraiser's report setting forth damages assessed by Jeff White for Bill O'Gorman along with a vehicle release certificate and two photographs.  Doc. 12-1 (identified as Exhibit A). There is no indication that the documents and photographs were made part of the record before the state courts. Therefore, they are not for this Court's consideration. *See Moore v. Mitchell*, 708 F.3d 760, 781 (6th Cir. 2013) (quoting *Cullen v. Pinholster*, — U.S. —, 131 S.Ct. 1388, 1398 (2011))  ("review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits[]").  Even assuming arguendo that Exhibit A is properly before this Court, the relevance of Exhibit A is not clear.  For example, the appraiser's report appears to have been prepared for insurance purposes, not as an expert report in connection with Makin's case.

was deficient under *Strickland*.   For example, Makin has not shown that his claim that the trial court abused its discretion by denying a request for continuance to secure the attendance of Jeff White, an alleged expert who had not produced an expert report, "was plainly stronger than those actually presented" in his direct appeal.  *Davila*, 137 S.Ct. at 2067.  Furthermore, he has not shown that the court of appeals' determination that Makin had failed to demonstrate prejudice "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement[.]"  *Perkins*, 411 Fed. Appx. at 828 (quoting *Harrington*, 131 S.Ct. at 786-788).

Moreover, as explained above, there is a double layer of deference applied when a federal habeas court considers a claim of ineffective assistance of counsel where a state court has reached the merits of such a claim.  Thus, "Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard."  *Id.*  Makin has failed to demonstrate that the state court of appeals did not reasonably determine that Makin was not prejudiced by appellate counsel's failure to argue that the trial court abused its discretion when it denied a request for a continuance made during the pendency of the jury trial to secure the appearance of an expert witness.

Considering the double layer of deference and Makin's failure to show that the state court of appeals' decision was contrary to or an unreasonable application of clearly established federal law or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding, the undersigned recommends that the Court **DENY** Ground One on the merits.

### 3. Ground Two

In Ground Two, Makin argues that his appellate counsel was ineffective for failing to raise in his direct appeal that the trial court abused its discretion and violated his constitutional rights by denying Makin's request to disqualify his trial counsel. Doc. 1, p. 7.

The Sixth Amendment entitles a defendant to effective assistance of counsel. *Tolliver v. Dallman*, 57 F.3d 1070, *2 (6th Cir. June 16, 1995) (unpublished) (citing *Strickland v. Washington*, 466 U.S. 686 (1984)). However, "[t]his right has not been extended to allow an indigent defendant the counsel of his choice." *Tolliver*, 57 F.3d at *2 (citing *United States v. Iles*, 906 F.2d 1122, 1130 (6th Cir. 1990)); *see U.S. v. Gonzalez-Lopez*, 548 U.S. 140, 151 (2006) (continuing to recognize limitations on the right to counsel of choice, noting that "the right to counsel of choice does not extend to defendants who require counsel to be appointed for them"). Since "[a]n indigent defendant has no right to have a particular attorney represent him," in order to be entitled to substitution of counsel, a defendant must show good cause for substitution. *Tolliver*, 57 F.3d at * 2. State and federal courts have recognized that a trial court must make some inquiry into a defendant's complaints where there has been a request for substitution of appointed counsel. *Id.* Notwithstanding the need for inquiry into a defendant's complaints, "[t]he Sixth Amendment does not guarantee the defendant a 'meaningful relationship' with his attorney." *Simmons v. Sheets*, 2011 WL 1043909, * 27 (S.D. Ohio Feb. 23, 2011), *report and recommendation adopted*, 2011 WL 1002734 (S.D. Ohio Mar. 16, 2011). Thus, "[t]he decision regarding whether to appoint new counsel at a defendant's request is committed to the sound discretion of the court." *Id*. (citing *United States v. Trujillo*, 376 F.3d 593, 606 (6th Cir. 2004).

In considering a request for substitution of counsel, a court is to consider: "the timeliness of the motion; the adequacy of the court's inquiry into the defendant's complaint; and whether

the conflict between the attorney and client was so great that it resulted in a total lack of communication preventing an adequate defense." *Id.* (citing *Benitez v. United States*, 521 F.3d 625, 632 (6th Cir. 2008); *United States v. Henderson*, 626 F.3d 326, 2010 WL 4670503, at *10 (6th Cir. Nov. 19, 2010)).  Further, "[c]onsideration of such motions requires a balancing of the accused's right to counsel of his choice and the public's interest in the prompt and efficient administration of justice." *Simmons*, 2011 WL 1043909, *27; *see also United States v. Jennings*, 83 F.3d 145, 148 (6th Cir. 1996) (same) (citing *United States v. Iles*, 906 F.2d 1122, 1130, n. 8 (6th Cir. 1990)).

When considering this claim as part of Makin's App. R. 26(B) application, the state court of appeals found that the court had already considered the underlying claim as part of Makin's direct appeal and Makin had failed to demonstrate prejudice.  *Makin*, 2018 Ohio App. LEXIS 1395, ** 2-4.  More particularly, the state court of appeals stated:

> [*P4]  Herein, Makin raises three proposed assignments of error in support of his claim of ineffective assistance of appellate counsel. Makin's first proposed assignment of error is that:

> > The trial court committed error and denied appellant his rights under the constitutions of the United States and Ohio when it "abused its discretion", and wrongfully denied appellant his right to disqualify his trial counsel Brian McGraw.

> [*P5]  Makin, through his first proposed assignment of error, argues that the trial court erred by failing to grant his request to remove appointed counsel. In *State v. Makin, supra*, this court held that:

> > Here, Makin requested that his appointed counsel be removed. The trial court conducted a hearing on Makin's request. A review of the hearing reveals that the court gave ample consideration to Makin's indications of his intent to self-represent. The trial court stated that it would give him a copy to read of the colloquy it must go through to determine if Makin could be his own attorney. The court stated:

> > "I'm not trying to talk you out of it. It's none of my business. There are some things that some people who want to represent themselves, that it sounds so

good and glorious and maybe they saw a movie of where somebody represented themselves and did real well, et cetera, but there are some pitfalls. It might be good for you to read this colloquy so you'll know exactly the kind of questions the Court is going to be asking you and it gives you some time to think about it."

The court then set the matter for a hearing contingent upon Makin's indication to the court that he wished to proceed pro se. This matter, however, was not raised again by Makin, and he proceeded to trial with appointed counsel.

The foregoing record does not support Makin's assertion that the trial court denied him of his right to self-representation. Rather, it indicates that the trial court advised Makin of his options and set the matter for a hearing that was then never pursued.

Accordingly, the first assignment of error is overruled.

*Makin, supra*, at ¶ 14.

[*P6]  The principles of res judicata may be applied to bar the further litigation of issues that were raised previously or could have been raised previously in an appeal. *State v. Perry*, 10 Ohio St.2d 175, 226 N.E.2d 104 (1967). Claims of ineffective assistance of appellate counsel in an application for reopening may be barred from further review by the doctrine of res judicata unless circumstances render the application of the doctrine unjust. *State v. Murnahan*, 63 Ohio St.3d 60, 584 N.E.2d 1204 (1992); *State v. Logan*, 8th Dist. Cuyahoga No. 88472, 2008-Ohio-1934.

[*P7]  Herein, this court has already determined that Makin was not prejudiced by the denial of the motion to remove appointed counsel. Res judicata prevents this court from once again reviewing the issue of removal of appointed counsel. *State v. Tate*, 8th Dist. Cuyahoga No. 81682, 2004-Ohio-973. We further find that circumstances do not render the application of the doctrine of res judicata unjust. Makin has failed to demonstrate that he was prejudiced through his first proposed assignment of error.

*Makin*, 2018 Ohio App. LEXIS 1395, ** 2-4.

In light of the state court of appeals' determination that the court had already decided the matter as part of the direct appeal and therefore res judicata applied to bar the court's consideration of the claim, this Court may find Ground Two barred by procedural default unless Makin can demonstrate cause and prejudice to overcome the default.  Even if not procedurally defaulted, Makin has not shown that the court of appeals' determination that Makin had failed to

demonstrate prejudice resulting from his appellate counsel's performance was contrary to or an unreasonable application of clearly established federal law or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  Accordingly, even if not procedurally defaulted, the undersigned recommends that the Court **DENY** Ground Two on the merits.

### 4.  Ground Three

In Ground Three, Makin argues that his appellate counsel was ineffective for failing to raise in his direct appeal that the state violated his constitutional rights by losing or destroying and not preserving evidence (the front end of U.S. Marshal Snack's 2008 Dodge Caravan) that Makin asserts was materially, exculpatory evidence.  Doc. 1, p. 8.

When considering this claim as part of Makin's App. R. 26(B) application, the state court of appeals found no prosecutorial misconduct based on Makin's claim and further found that he failed to demonstrate prejudice.  *Makin*, 2018 Ohio App. LEXIS 1395, ** 7-9.  More particularly, the state court of appeals stated:

[*P12]  Makin's third proposed assignment of error is that:

Ineffective assistance of counsel against appellate counsel for not raising prosecutorial misconduct due to the state losing or destroying and not preserving materially exculpatory evidence and that being the front end of U.S. Marshal Snack's 2008 Dodge Caravan and appellant is also going to combine ineffective assistance of trial counsel for not bringing to the trial court's attention that the state lost or destroyed exculpatory evidence and that being the front end of U.S. Marshal Snack[']s 2008 Dodge Caravan.

[*P13]  Makin, through his third proposed assignment of error, argues that he was prejudiced through prosecutorial misconduct. Specifically, Makin argues that the failure of the prosecutor, to preserve or introduce as exculpatory evidence the actual front bumper and grill of a vehicle operated by a United States Marshal that collided with Makin's vehicle, constituted prosecutorial misconduct that should have been argued on appeal.

[*P14]  The prosecutor possesses two basic duties in a criminal trial. The prosecutor is to present the case for the state as its advocate, and the prosecutor is responsible to ensure that an accused receives a fair trial. *Berger v. U.S.*, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed.1314 (1935); *State v. Staten*, 14 Ohio App.3d 78, 14 Ohio B. 91, 470 N.E.2d 249 (2d Dist.1984).

[*P15]  Misconduct of a prosecutor at trial will not be considered grounds for reversal unless the conduct deprives the defendant of a fair trial. *State v. Apanovitch*, 33 Ohio St.3d 19, 514 N.E.2d 394 (1987); *State v. Maurer*, 15 Ohio St.3d 239, 15 Ohio B. 379, 473 N.E.2d 768 (1984). The touchstone of analysis is "the fairness of the trial, not [**9] the culpability of the prosecutor." *State v. Underwood*, 73 Ohio App.3d 834, 840-841, 598 N.E.2d 822 (4th Dist.1991), citing *Smith v. Phillips*, 455 U.S. 209, 219, 102 S.Ct. 940, 947, 71 L.Ed.2d 78 (1982). An appellate court should also consider whether the misconduct was an isolated incident in an otherwise properly tried case. *State v. Keenan*, 66 Ohio St.3d 402, 410, 613 N.E.2d 203 (1993); *Darden v. Wainwright*, 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986).

[*P16]  Herein, we find no prosecutorial misconduct based upon the failure of the prosecutor to preserve or present alleged exculpatory evidence at trial. Exhibit Nos. 4, 6-9, 11, 12, 32-44, and 46-55, and photographs of the motor vehicle operated by Makin and the motor vehicle operated by the U.S. Marshal, clearly demonstrate the damage sustained by each vehicle that resulted from a collision between the two motor vehicles. Makin has failed to demonstrate how the failure of the prosecutor to present at trial the actual grill and front bumper of the motor vehicle operated by the U.S. Marshal resulted in prejudice. In addition, Makin has failed to provide this court with any evidence to support the claim that the prosecutor destroyed or hid exculpatory evidence. Any such evidence dehors the record and could not be considered on direct appeal. *State v. Jackson*, 149 Ohio St. 3d 55, 2016-Ohio-5488, 73 N.E.3d 414; *State v. Madrigal*, 87 Ohio St. 3d 378, 2000-Ohio-448, 721 N.E.2d 52. Makin has failed to demonstrate that he was prejudiced through his third proposed assignment of error.

*Makin*, 2018 Ohio App. LEXIS 1395, ** 7-9.

Makin's arguments presented in his Traverse amount to a request that this Court consider his claim of ineffective assistance of appellate counsel and the underlying claim of prosecutorial misconduct de novo.  However, as explained herein, where the state court has considered the claim on the merits, as the state court of appeals did when deciding Makin's App. R. 26(B) application, deference under 28 U.S.C. § 2254 applies.  *See Perkins*, 411 Fed. Appx. at 828. Makin has failed to argue or demonstrate that the state court of appeals' determination was

29

contrary to or an unreasonable application of clearly established federal law or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  Accordingly, the undersigned recommends that the Court **DENY** Ground Three on the merits.

## IV. **Recommendation**

For the reasons stated above, the undersigned recommends that the Court **DENY** Makin's Petition.


Dated: September 8, 2021

/s/ Kathleen B. Burke
Kathleen B. Burke
United States Magistrate Judge


## **OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).